# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Case No.

SANDRA JOHNSON,

       Plaintiff,

v.

WRIGHT MEDICAL TECHNOLOGY, INC.,
a Delaware corporation,

       Defendant.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff, SANDRA JOHNSON, by and through her undersigned attorney, hereby files this Complaint and Jury Demand against Defendant WRIGHT MEDICAL TECHNOLOGY, INC., and alleges the following in support thereof:

### PARTIES

1.    At all relevant times, Plaintiff Sandra Johnson was and is a resident and citizen of the state of Colorado, currently residing in Highlands Ranch, Douglas County, Colorado.

2.    Defendant Wright Medical Technology, Inc., (also referred to as WMT or Wright Medical) is a Delaware corporation with its principal place of business at 1023 Cherry Road, Memphis, Tennessee 38117, and as such is a citizen of both the state of Tennessee and the state of Delaware.

3.     Defendant caused an event to occur in the state of Colorado out of which Plaintiff's claims arise, and at all relevant times conducted regular and sustained business in the state of Colorado.

## JURISDICTION and VENUE

4.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) as the parties are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

5.     Defendant is subject to the Court's personal jurisdiction because Defendant has sufficient minimum contacts with Colorado such that the exercise of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice.

6.     Defendant is a corporation, and thus is deemed to reside in any judicial district in which it is subject to the jurisdiction of this Court.  28 U.S.C. §1391(c).

7.     Defendant did business in Denver County, Colorado, arranged for the delivery of the medical devices that are the subject of this civil action in Denver County, Colorado, the surgeries performed upon Plaintiff that are relevant and material to this civil action took place in Denver County, Colorado, the surgeries that are relevant and material to this civil action took place in Denver County, Colorado, and the sale to Plaintiff of the Wright Medical devices that are the subject of this civil action took place in Denver County, Colorado.

8.     As Defendant is subject to personal jurisdiction in Denver County, Colorado, venue is proper in this United States District Court.  28 U.S.C. §1391(a)(1).

**Wright Medical Technology, Inc.**

9.      At all times relevant hereto, Wright Medical Technology, Inc. was involved in the design, manufacture, labeling, marketing, distribution, and sale of prosthetic hip devices throughout the United States, and in Colorado, including the Conserve® Total A-Class™ Femoral Head with BFH™ Technology and the Conserve® Plus Acetabular Cup [hereinafter the Conserve® hip system].

10.     In the Conserve® hip system the metal femoral head is in direct contact with a metal acetabular cup.

11.     Plaintiff alleges that Wright Medical Technology, Inc. did not properly test the device for safety, efficacy, and durability.  Plaintiff further alleges Defendant marketed, promoted, and encouraged orthopedic surgeons in the U.S. to use the Conserve® hip system without properly screening, selecting, or training the surgeons on how to properly implant the Conserve® hip system.

12.     Plaintiff alleges that prior to Plaintiff Sandra Johnson's hip replacement surgery, Defendant knew or should have known that the Conserve® hip system was failing and causing serious post-implant complications for many patients.  Those complications arising out of the implantation of the Conserve® hip system, which Defendant knew or should have known about, include but are not limited to: bone cysts; pseudo-tumors; metallosis and osteolysis; high levels of metal ions such as chromium and cobalt in the bloodstream; detachment, disconnection, and/or loosening of the acetabular cup; loosening of the femoral component; and other complications requiring revision surgery.  Plaintiff alleges Defendant concealed the true risks of the Conserve® hip system and instead continued to market, defend, and promote the Conserve® hip system.

## FACTS

### Plaintiff Sandra Johnson's Implant Surgery

13.     Prior to implantation, Plaintiff Sandra Johnson received representations from her implanting orthopedic surgeon with respect to the devices at issue in this litigation.  Specifically, Sandra Johnson was advised by John K. Davis, M.D., orthopedic surgeon, that the devices at issue were (1) appropriate for her; (2) would permit her to return to an active lifestyle; and (3) would likely last approximately 20 to 25 years following implantation, if not longer.

14.     Upon information and belief, the representations received by Plaintiff Sandra Johnson from Dr. Davis, as described in the above paragraph, were based on representations that Dr. Davis received from Defendant, as discussed in detail throughout this Complaint.

15.     Plaintiff Sandra Johnson relied on the representations she received from Dr. Davis, and discussed in detail herein, in proceeding with implantation of the devices at issue.

16.     Upon information and belief, Dr. Davis relied on Wright Medical's representations discussed herein, including that the devices at issue would permit a patient to return to an active lifestyle, in deciding to implant Plaintiff Sandra Johnson with the devices at issue.

17.     On or around September 2, 2009, Plaintiff Sandra Johnson underwent a total hip arthroplasty (THA) on her left side.

18.     The September 2, 2009, THA was performed at Porter Adventist Hospital, Denver, Colorado.

19.     The September 2, 2009, left hip THA was performed by orthopedic surgeon, John K. Davis, M.D.

20.     In her left total hip replacement surgery on September 2, 2009, Plaintiff had implanted in her left hip the following specific Wright Medical devices and components:

      a.      Profemur® TL Stem
              Ref: PRLT0025
              Size 5

      b.      Titanium Profemur® Modular Neck
              Ref: PHA0-1202
              Neutral; Short

      c.      Conserve® Total A-Class® Femoral Head w/BFH® Technology
              REF: 38AM-4604
              46 mm O.D. Short Neck
              SLT Taper, CoCr

      d.      Conserve® Plus Acetabular Cup
              REF: 3802-4652
              52mm O.D.; 46mm I.D.

21.     At the time of the implantation, the representations made by Defendant to Plaintiff Sandra Johnson, through Plaintiff's orthopedic surgeon, were misleading and false.

22.     After receiving her Conserve hip, and recovering from the September 2, 2009, implantation surgery, for a number of years Plaintiff's left artificial hip performed as expected.

23.     However, by the later part of the year 2020, Plaintiff's left hip had become painful.

24.     In early 2021, orthopedic surgeon Jason Jennings, M.D. informed her that he believed that her left hip had failed due to its metal-on-metal bearing surface, and needed to be replaced.

25.     On March 9, 2021, Sandra Johnson's Conserve® hip system was revised by Dr. Jennings at Porter Adventist Hospital, in Denver, Colorado.

26.     In the course of the revision of Plaintiff's hip, Dr. Jennings noted "there was gross evidence of metallosis throughout the hip."

27.     Dr. Jennings was able to explant the Profemur TL Stem without performing an extended trochanteric osteotomy.

28.     In the March 9, 2021, revision hip surgery, all of the Wright Medical hip devices that had been implanted on September 2, 2009, were removed and replaced with artificial hip devices manufactured by Biomet-Zimmer.

29.     As a direct and proximate result of the failure of the Conserve® hip system designed, manufactured, and sold by Defendant, Plaintiff Sandra Johnson has sustained injuries and damages including, but not limited to, the following:

    a.   undergoing revision surgery to remove and replace hip devices;

    b.   adverse symptoms associated with metallosis in her left hip;

    c.   past and future pain and anguish, in both mind and body;

    d.   permanent diminishment of her ability to participate and enjoy the affairs of life;

    e.   medical bills and treatment associated with the replacement procedures, recoveries from the same and reasonably probable to be incurred in the future;

    f.   loss of enjoyment of life;

    g.   disfigurement; and,

    h.   the physical impairment and permanent nature and extent of the injuries.

**The Wright Medical Metal-on-Metal Conserve® Hip**

30.     Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

31.     The Wright Medical Conserve® Total A-Class™ Femoral Head is compatible for use with an acetabular cup component called the Wright Medical Conserve® Plus cup, which is what was utilized in Plaintiff Sandra Johnson's 2009 left THA.

32.     The Wright Medical Conserve® Hip is known as a "metal-on-metal" bearing surface hip joint, where both the Conserve® cup and the Conserve® femoral head are made of a cobalt-chrome alloy, and those two components, are in contact, or "articulate" with each other.

33.     Prior to September 2009, Defendant knew or should have known that the Conserve® Hip metal-on-metal bearing surface had a propensity to excessively wear at the metal-on-metal bearing surface and shed metal ions and/or metal debris from the articulating surfaces.

34.     Prior to September 2009, Defendant knew or should have known that the excessive wear of the Conserve® Hip metal-on-metal bearing surface caused some patients to develop adverse reactions to high levels of metal debris generated by normal use of the Conserve® Hip.

35.     Prior to September 2009, Defendant knew or should have known that the Conserve® Hip was defective and harmful to consumers and that these components had an unacceptable failure and complication rate.

36.     Prior to, on, and after September 2009, Defendant marketed its Conserve® Hip with claims that it was superior to other hip devices, both its own and other manufacturers, in that it would not wear or shed metal ions or metal debris at the rate of other hip devices, and that it would last longer than other hip devices then on the market.

37.     Prior to, on, and after September 2009, Defendant withheld from consumers and surgeons, including Plaintiff's implanting surgeon, the truth it knew, which is that its Conserve® Hip was not superior to other hip devices then on the market, both its own and other manufacturers, and would shed metal debris at an increased rate compared to other hip devices, and would likely need to be revised earlier than other non-metal-on-metal devices then on the market.

38.     At the time of Wright Medical's design, manufacture, marketing, distribution, and sale of the Conserve® Hip, feasible, alternative safer designs were known and available to Wright Medical including, but not limited to, designs that utilized non-metal-on-metal articulating surfaces such as polyethylene on metal, or ceramic on ceramic articulating surfaces, which are less likely to result in the emission of harmful metal debris, metal ions, and adverse symptomology related to the same.

39.     Had Defendant Wright Medical properly and adequately tested the Conserve® Hip, it would have been discovered that the Conserve® Hip would emit substantial metal debris and harmful metal ions, and was certain to fail in numbers and rates significantly higher than expected and at rates higher than other available feasible, alternative hip devices.

## COUNT I – STRICT PRODUCT LIABILITY

40.     Plaintiff incorporates by reference the foregoing paragraphs, as if fully set forth herein, and further alleges as follows.

41.     On and prior to September 2009 Defendant was engaged in the business of designing, manufacturing, marketing, distributing, labeling, and selling orthopedic hip implants and did design, manufacture, distribute, market, label and sell the artificial hip devices implanted in Plaintiff Sandra Johnson in September 2009.

42.     Defendant had a duty to place into the stream of commerce, design, manufacture, distribute, market, promote, label, and sell the metal-on-metal Conserve® hip so that it was neither defective or unreasonably dangerous when put to the use for which it was designed, manufactured, distributed, marketed, and sold.

43.     Defendant did in fact design, manufacture, sell, distribute, supply, and/or promote the metal-on-metal Conserve® hip to Plaintiff Sandra Johnson and her implanting physician, John K. Davis, M.D.

44.     Defendant expected the metal-on-metal Conserve® hip which it designed and was selling, distributing, supplying, manufacturing, and/or promoting to reach, and which did in fact reach, implanting physicians and consumers in the state of Colorado, including Plaintiff and her implanting physician, without substantial change in its condition.

45.     At the time the metal-on-metal Conserve® hip left the possession of Defendant and at the time the metal-on-metal Conserve® hip entered the stream of commerce, it was in an unreasonably dangerous and defective condition.  These defects include, but are not limited to, the following:

    a.  The metal-on-metal Conserve® hip was not reasonably safe as intended to be used;

    b.  The metal-on-metal Conserve® hip had an inadequate design for the purpose of hip replacement;

    c.  The metal-on-metal Conserve® hip contained unreasonably dangerous design defects, including an inherently unstable and defective design which resulted in an unreasonably high probability of early failure;

d.  The metal-on-metal Conserve® hip design puts the metal femoral ball directly in contact with the metal acetabular cup which produces a large amount of metal-on-metal wear debris;

e.  The metal-on-metal Conserve® hip's unstable and defective design resulted in a hip prosthesis which had risks which exceeded the benefits of the medical device;

f.  The metal-on-metal Conserve® hip has a propensity for the acetabular cup to detach, disconnect and/or loosen from the acetabulum;

g.  The metal-on-metal Conserve® hip has a propensity to cause adverse patient reactions to high levels of metal debris generated by normal use of the metal-on-metal Conserve® hip;

h.  The metal-on-metal Conserve® hip's unstable and defective design resulted in a hip prosthesis which was more dangerous than the ordinary consumer would expect;

i.  The metal-on-metal Conserve® hip failed to perform in a manner reasonably expected in light of its nature and intended function and subjected Plaintiff Sandra Johnson to an unreasonable risk of harm beyond that contemplated by an ordinary person;

j.  The metal-on-metal Conserve® hip devices implanted in Plaintiff were defective in their manufacture and construction, in that they did not have adequate product specifications to control the manufacturing processes, resulting in the introduction of manufacturing defects, thereby creating a

serious and unreasonable risk of injury by the failure of the metal-on-metal Conserve® hip;

k.  The metal-on-metal Conserve® hip and individual components of the same may be defective in their manufacture in ways that have yet to be discovered, but which may be discovered as a result of future evaluation and/or testing of the explanted devices;

l.  The metal-on-metal Conserve® hip was insufficiently tested;

m.  The labeling and warnings to Plaintiff Sandra Johnson and Plaintiff's implanting physician about the dangers and risks of the metal-on-metal Conserve® hip posed to consumers were inadequate, insufficient, and misleading.  Examples of the inadequacy of Defendant's warnings include, but are not limited to, one or more of the following particulars:

   i.  The metal-on-metal Conserve® hip contained warnings insufficient to alert Plaintiff and Plaintiff's physicians as to the risk of adverse events and/or reactions associated with the metal-on-metal Conserve® hip subjecting Plaintiff to risks which exceeded the benefits of the metal-on-metal Conserve® hip;

   ii.  The Conserve® Cup contained misleading warnings emphasizing the efficacy of the metal-on-metal Conserve® hip while downplaying the risks associated with it, thereby making use of the metal-on-metal Conserve® hip more dangerous than the ordinary consumer would expect;

    iii. The metal-on-metal Conserve® hip contained insufficient and/or incorrect warnings to alert consumers, including Plaintiff, through their prescribing physicians regarding the risk, scope, duration, and severity of the adverse reactions associated with the metal-on-metal Conserve® hip;

    iv. The metal-on-metal Conserve® hip did not disclose that it was inadequately tested;

    v. The metal-on-metal Conserve® hip failed to convey adequate post-marketing warnings regarding the risk, severity, scope and/or duration of the dangers posed by the metal-on-metal Conserve® hip; and,

    vi. The metal-on-metal Conserve® hip failed to contain instructions sufficient to alert consumers to the dangers it posed and to give them the information necessary to avoid or mitigate those dangers.

46.    At the time of Wright Medical's design, manufacture, importation, marketing, distribution, and sale of the metal-on-metal Conserve® hip, feasible, alternative safer designs for the device were known and available to Wright Medical including, but not limited to, designs that utilized non-metal-on-metal articulating surfaces such as polyethylene on metal, or ceramic on ceramic articulating surfaces, which are less likely to result in metal-on-metal wear debris, metal ions, and adverse symptomology related to the same.

47.    At the time of Wright Medical's design, manufacture, marketing, distribution, and sale of the metal-on-metal Conserve® hip, feasible, alternative safer designs were known and available to Wright Medical including, but not limited to, designs that utilized non-metal-on-metal

articulating surfaces such as polyethylene on metal, or ceramic on ceramic articulating surfaces, which are less likely to result in the emission of harmful metal debris, metal ions, and adverse symptomology related to the same.

48.     Had Defendant Wright Medical properly and adequately tested the metal-on-metal Conserve® hip, it would have been discovered that the metal-on-metal Conserve® hip would emit substantial metal debris and harmful metal ions and was certain to fail in numbers and rates significantly higher than expected and at rates higher than other available feasible, alternative hip devices.

49.     Plaintiff Sandra Johnson used the metal-on-metal Conserve® hip for its intended purpose, *i.e.*, hip replacement.

50.     Plaintiff Sandra Johnson could not have discovered any defects with the metal-on-metal Conserve® hip through the exercise of due care.

51.     Defendant, as designer, manufacturer, marketer, and distributor of medical devices is held to the level of knowledge of an expert in their field.

52.     Plaintiff and her implanting physician did not have substantially the same knowledge as Defendant who was the designer, manufacturer, or distributor of the metal-on-metal Conserve® hip.

53.     The metal-on-metal Conserve® hip is a defective and unreasonably dangerous product which Defendant placed into the stream of commerce and is therefore, strictly liable. Defendant knew or should have known of the dangerous condition of the product and therefore should not have marketed, sold, and/or placed it on the market.  A reasonably prudent manufacturer

aware of the dangerous conditions posed by the product would not have marketed, sold, and/or placed these products on the market.

54.     As a direct and proximate result of Defendant's defective design, failure to properly warn, lack of quality control and other wrongful conduct, Plaintiff Sandra Johnson has sustained and will continue to sustain permanent and severe physical injuries, severe emotional distress, mental anguish, economic losses, and other damages.  Plaintiff Sandra Johnson has expended and may expend money in the future for medical bills and expenses.

55.     Plaintiff is entitled to compensatory damages against Defendant for strict products liability in an amount to be proven at trial, together with costs of this action.

## COUNT II – NEGLIGENCE

56.     Plaintiff incorporates the foregoing paragraphs of this Complaint as if fully set forth herein and further alleges as follows.

57.     At all times relevant, it was the duty of Defendant to exercise due care in designing, testing, manufacturing, distributing, labeling, marketing, promoting, and selling the metal-on-metal Conserve® hip such that it would be reasonably safe for its intended use.

58.     Defendant's negligence in the designing, testing, manufacturing, labeling, distributing, marketing, promoting, selling, and failing to provide adequate warnings related to the metal-on-metal Conserve® hip includes, but is not limited to, the following:

a.  the metal-on-metal Conserve® hip was negligently designed;

b.  the metal-on-metal Conserve® hip was negligently designed creating insufficient coverage of the femoral component;

c. the metal-on-metal Conserve® hip was negligently designed and/or manufactured creating increased metal on metal wear between the femoral component and the acetabular component[1];

d. the metal-on-metal Conserve® hip was negligently designed and/or manufactured creating increased metal corrosion[2];

e. the metal-on-metal Conserve® hip was negligently designed and/or manufactured creating an unacceptable differential hardness of the cup and femoral head that is caused by among other things the technique and/or manner of the heat treatment of the femoral head and the acetabular cup[3];

f. Defendant committed manufacturing errors, including, but not limited to, component size tolerances out of specification and not within acceptable industry standards;

g. Defendant, in advertising, marketing, labeling, promoting, packaging, and selling the metal-on-metal Conserve® hip negligently misrepresented material facts regarding its safety, efficacy and fitness for human use by claiming that

---

[1] Langton DJ, Jameson SS, Joyce TJ, Hallab NJ, Natu S, Nargol AV, Early failure of metal-on-metal bearings in hip resurfacing and large-diameter total hip replacement: A consequence of excess wear. *J. Bone Join Surg* [Br]. 2010 Jan; 92(1):38-46.

[2] See generally Meftah, Morteza; Nicolaou, Nicos; Rodriguez, Jose A, Metal allergy response to femoral head-neck corrosion after total hip replacement. Current Orthopaedic Practice, September/October 2010, Vol. 21, Issue 5, pp. 530-533.

[3] Kinbrwn A, Unsworth A, The wear of high-carbon metal-on-metal bearings after different heat treatments. *Proc Ins Mech Eng H* 2008; 222:887-95.

the metal-on-metal Conserve® hip was fit for its intended purpose when, in fact, it was not;

h.  Defendant, in advertising, marketing, labeling, promoting, packaging, and selling the metal-on-metal Conserve® hip, negligently misrepresented, and omitted, material facts regarding its safety, efficacy, and fitness for human use by claiming that the metal-on-metal Conserve® hip was adequately and reliably tested when, in fact, it had not;

i.  Defendant, in advertising, marketing, labeling, promoting, packaging, and selling the metal-on-metal Conserve® hip, negligently misrepresented, and omitted, material facts regarding its safety, efficacy, and fitness for human use by claiming that the metal-on-metal Conserve® hip was safe and effective and was appropriate for use by human beings when, in fact, it was not;

j.  Defendant, in advertising, marketing, labeling, promoting, packaging, and selling the metal-on-metal Conserve® hip, negligently misrepresented and omitted material facts regarding its safety, efficacy, and fitness for human use by claiming the risk of serious adverse events and/or effects from the metal-on-metal Conserve® hip was comparable to that of other hip replacement systems when, in fact, it was not; and,

k.  Defendant, in advertising, marketing, labeling, promoting, packaging, and selling the metal-on-metal Conserve® hip, negligently misrepresented and omitted material facts regarding its safety, efficacy, and fitness for human use by claiming that the metal-on-metal Conserve® hip had not caused or

contributed to serious adverse events and/or effects requiring the premature explants of the device when, in fact, it had.

59.      Defendant knew or had reason to know that Plaintiff was a member of the general public for whose use the metal-on-metal Conserve® hip was placed into interstate commerce, and who would be likely to use the metal-on-metal Conserve® hip in a manner described in this Complaint.

60.      Defendant knew or reasonably should have known of the said product defects, inadequate or improper warnings and dangers associated with the manner and circumstances of Plaintiff's foreseeable use of the metal-on-metal Conserve® hip, which would not be obvious to the general public.

61.      As a direct and proximate result of one or more of the foregoing wrongful acts or omissions by Defendant, the metal-on-metal Conserve® hip caused Plaintiff to suffer and sustain injuries of a severe and permanent nature, severe emotional distress, mental anguish, economic losses, and other damages.

62.      Plaintiff was caused to and will in the future be caused to endure pain and suffering in body and mind.  In an endeavor to cure her injuries, Plaintiff was caused to and will in the future be caused to expend money for medical care.

63.      Plaintiff is entitled to recover compensatory damages against Defendant for negligence in an amount to be proven at trial, together with costs of this action.

## COUNT III – NEGLIGENT MISREPRESENTATION

64.      Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein and further alleges as follows.

65.     To prove negligent misrepresentation, Plaintiff must prove the following elements: (a) Defendant's negligent supply of false information to a foreseeable person, known or unknown; (b) such person's reasonable reliance upon that false information; and, (c) economic injury proximately resulting from such reliance.

66.     At all times material hereto, Defendant misrepresented that the metal-on-metal Conserve® hip in question was safe for its intended use.

67.     Defendant knew or should have known of the use for which the metal-on-metal Conserve® hip was intended and the serious risks and dangers associated with such use of the metal-on-metal Conserve® hip.

68.     Defendant owed a duty to treating physicians and to the ultimate end users of the metal-on-metal Conserve® hip, including Plaintiff Sandra Johnson, to accurately, truthfully, and sufficiently represent the risks of the metal-on-metal Conserve® hip.

69.     Defendant breached its foregoing duty by misrepresenting and/or failing to adequately warn Plaintiff Sandra Johnson's surgeon, the medical community, Plaintiff Sandra Johnson, and the public about the risks of the metal-on-metal Conserve® hip, which Defendant knew or in the exercise of reasonable diligence should have known.  These risks include, but are not limited to, the failure rates, the emission of metal debris, and the likelihood of painful and debilitating revision surgery.

70.     Furthermore, prior to implantation, Plaintiff Sandra Johnson received representations from her surgeon with respect to the devices at issue in this litigation.  Specifically, Sandra Johnson was advised by Dr. John K. Davis, orthopedic surgeon, that the devices at issue

were (1) appropriate for her; (2) would permit her to return to an active lifestyle; and (3) would likely last approximately 20 to 25 years following implantation, if not longer.

71.     Upon information and belief, the representations received by Plaintiff Sandra Johnson from Dr. Davis, as described in the above paragraph, were based on representations that Dr. Davis received from Defendant, as discussed in detail throughout this Complaint.

72.     Plaintiff Sandra Johnson reasonably relied on the representations identified above, and discussed in detail herein, in proceeding with implantation of the devices at issue in 2009.

73.     Upon information and belief, Dr. Davis relied on Defendant's representations discussed herein, including that the devices at issue would permit a patient to return to an active lifestyle, in deciding to implant Plaintiff Sandra Johnson with the devices at issue.

74.     The representations made by Defendant to Plaintiff, through Plaintiff's surgeon, were inaccurate, insufficient, misleading, and false.

75.     As a direct and proximate result of Defendant's wrongful conduct, Plaintiff Sandra Johnson sustained and will continue to sustain severe physical injuries, severe emotional distress, mental anguish, economic losses, and other damages.

76.     Plaintiff is entitled to recover compensatory damages for the negligent misrepresentations made by Defendant in an amount to be proven at trial, together with costs of this action.

## **DAMAGES**

77.     Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and for her damages for each cause of action further alleges as follows.

78.     As a direct and proximate result of the failure of the Wright Medical metal-on-metal Conserve® hip implanted in Plaintiff Sandra Johnson, and the conduct, actions, inactions and omissions of Defendant, Plaintiff Sandra Johnson has sustained injuries and damages including, but not limited to:

    a.   serious and permanent physical injuries to bone, muscle, tendons, tissues and nerves in her left hip, and pelvis;

    b.   undergoing revision surgery to remove and replace the hip components and repair the damage that the metal-on-metal Conserve® hip failure caused;

    c.   past and future pain, suffering, and anguish, both in mind and in body;

    d.   physical disability, past and future;

    e.   physical impairment, including permanent impairment;

    f.   disfigurement;

    g.   loss of enjoyment of life; and,

    h.   medical bills and treatment associated with the replacement surgery, therapy, and recovery therefrom.

## **PRAYER FOR RELIEF**

### **ON ALL COUNTS**

WHEREFORE, Plaintiff Sandra Johnson prays for judgment in her favor and an award of damages against Defendant Wright Medical Technology as follows:

    a.   special damages, to include past and future medical and incidental expenses, according to proof;

b.  past and future general damages, to include loss of enjoyment of life, pain and suffering, the nature and extent of the injury, inconvenience, emotional distress, and mental anguish, according to proof;

c.  damages for past and future physical impairment;

d.  damages for permanent impairment;

e.  pre-judgment (as to special damages actually incurred) and post-judgment interest;

f.  the costs of this action; and,

g.  for any and all such other and further legal and equitable relief as the Court deems necessary, just, equitable and proper.

**<u>JURY TRIAL DEMANDED</u>**

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this 10th day of May 2022.

_/s/ George E. McLaughlin_
George E. McLaughlin
McLaughlin Law Firm, P.C.
1890 Gaylord Street
Denver, CO 80206-1211
Telephone: 720-420-9800
GEM@MCLLF.com